**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:05-CV-364** |
| **MARK DAVID SHAPIRO,** | § | **(Judge Schneider/Judge Bush)** |
| **PHILIP B. MURPHY, THOMAS** | § | |
| **GERALD DAHLEN, JR., ALBERT** | § | |
| **M. ABBOOD, AND JAMES H.** | § | |
| **THATCHER,** | § | |
| | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court is Defendant Albert M. Abbood's Motion to Dismiss (Dkt. 62).

Having reviewed the motion, response, and applicable authorities, the Court finds that it should be

**GRANTED**, in part, and **DENIED**, in part, as set forth fully below.

BACKGROUND

Defendant Albert M. Abbood files this Motion to Dismiss pursuant to FRCP Rule 12(b)(6)

and 9(b).  Abbood, among others, has been sued by the SEC for violations of the Securities Act of

1933 (15 U.S.C. § 77u(a)) and the Securities Exchange Act of 1934 (15 U.S.C. §§78(e) and 78aa).

The gist of the complaint centers on Abbood's practice of obtaining "side letters" from customers

which enabled Fleming to prematurely book income, when, under Generally Accepted Accounting

Principles (GAAP), the income should have been prorated over a longer period of time.  The SEC

1

alleges that this scheme allowed Fleming to misrepresent the true earnings picture for the company.

Abbood was a vice president in Fleming's wholesale procurement department who reported to another defendant, Philip Murphy, vice president in charge of Fleming's wholesale procurement department. The complaint alleges that grocery industry vendors routinely pay wholesalers up-front monies to secure advantages such as favorable product positioning or exclusive supplier status. The SEC maintains that these *future* advantages must be recognized as payments over a period of time, rather than up-front payments which could be booked as income immediately.

Abbood finds himself ensnared in this suit because of his involvement in five transactions: Food Marketing Group; Dexsi, Kraft, Dexsi-2002, and Kraft-2002.

## **FOOD MARKETING GROUP**

The first transaction involves Abbood's contact with Food Marketing Group (FMG). The complaint alleges that Abbood demanded that FMG pay Fleming $2 million to be described as a rebate based on 2001 purchases. FMG resisted this demand and went to Murphy. Murphy allegedly repeated this demand. The SEC has alleged no other conduct by Abbood in regard to FMG. In fact, after Murphy met with FMG, Shapiro and the FMG's CFO worked out a proposal to handle the $2 million rebate. The complaint alleges that FMG refused to characterize the payment as a rebate. The SEC alleges no other involvement by Abbood other than this initial contact concerning a "rebate," which never materialized as such. According to the complaint, there were two letters between the parties designed to hide the true nature of the transaction, but this was all engineered by Shapiro, not Abbood.

## DEXSI

The complaint alleges that Dexsi was another diverter with which Fleming did business. Essentially, diverters scour the market for purchase of excess inventory and discounted material and then resell to companies such as Fleming. The SEC alleges that Abbood approached Dexsi demanding a $2 million payment, and a letter falsely stating the payment was attributed to past performance. The SEC claims that Abbood threatened to pull Fleming's business if Dexsi refused. In return, Dexsi secured Abbood's agreement to allow Dexsi to recoup the $2 million by charging Fleming a higher-than-normal price on diverting purchases. There were two letters. One was classified as a rebate for prior business between the companies. Abbood gave this letter to the company's internal auditors. The second letter, not furnished, referenced the recoupment of the payment.

## KRAFT

Kraft allegedly believed that Fleming was charging it excess deductions and, in effect, diverting Kraft's products, causing potential loss to Kraft. The parties agreed to settle their differences, and in June 2001 they agreed to a one-year preferred vendor agreement under which Kraft would pay more than $10.7 million in return for Fleming's commitment to eliminate various types of deductions and fees. According to the SEC, Abbood asked Kraft to accelerate payment of $1.65 million under the no-divert agreement in December 2001, when such funds were not due until the first quarter of 2002. To disguise the true nature of the transaction, the SEC alleges that Abbood prepared a letter for Kraft's signature stating that the payment was an offset  to purported administrative expenses under the no-divert agreement, when there were in fact no administrative costs to offset. This letter was submitted to the auditors without full disclosure.

3

## DEXSI - 2002

According to the complaint, Abbood demanded that Dexsi pay $4 million and provide a side letter describing the payment as reimbursement of warehouse expenses that Dexsi purportedly incurred during the quarter.  Abbood agreed to a reciprocal side agreement allowing Dexsi to charge higher diverting prices to recoup its payment.  Abbood took this letter to accounting.

## KRAFT-2002

Abbood and Kraft agreed to a no-divert agreement for 2002 in which Kraft would pay $5.6 million to Fleming.  This amount was to be paid in installments over a one-year period.  Abbood tried to get Kraft to characterize the agreement as a clear-cut rebate.  Kraft balked at this suggestion.  With the assistance of Murphy, Kraft gave Abbood a letter noting the agreement to pay in installments.  Abbood directed that Kraft send a corrected letter which did not refer to any payment plan, but only to the payment being a non-refundable reimbursement for a purported shortfall under the parties' preferred vendor agreement.  This letter, which misrepresented the nature of the payment, was then presented to the accounting department.  The SEC maintains that this income should have been prorated over the term of the agreement.

### STANDARD

In determining the propriety of a motion to dismiss under FRCP Rule 12(b)(6), the Court must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff.  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).  Nevertheless, the Court is not required to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.  *Id.*  Motions to dismiss are generally disfavored.  *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965-66 (2007) (internal citations omitted). Factual allegations must be enough to raise the right to relief above a speculative level, *see* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n.1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Federal Rule of Civil Procedure 9(b) requires that plaintiffs plead enough facts to illustrate "the 'who, what, when, where, and how' of the alleged fraud." *Williams v. Bell Helicopter Textron, Inc.,* 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams,* 112 F.3d at 177 (citing *Tuchman*, 14 F.3d at 1068); *see also Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994). "[A]rticulating the elements of fraud with particularity [also] requires a plaintiff to ...

explain why the statements were fraudulent." *Williams,* 112 F.3d at 177 (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

## ANALYSIS

Because this action is brought by the SEC, the heightened pleading requirements of the PSLRA are inapplicable.  *See SEC v. Kornman,* 391 F.Supp.2d 477, 494 (N.D. Tex. 2005).  The Court finds that Abbood's Motion to Dismiss should be denied as to Rule 9(b), except as to the SEC's complaint concerning FMG.

As to FMG, the complaint fails to state a claim for relief as to Abbood on any ground, whether in fraud or for violation of the securities laws.  Any ultimate violation of the Act had nothing to do with Abbood's participation.  The Court will address the four remaining transactions to determine whether there was a violation of the securities laws as alleged by the SEC.

### Claim Two: SEC's 10(b) and 10b-5 Claim

Abbood's first ground for dismissal focuses on the SEC's complaint as to Claim Two. Section 10(b) of the Securities Exchange Act makes it unlawful for any person, directly or indirectly, "[t]o use or employ, in connection with the purchase or sale of any security..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C.  § 78j(b).  Rule 10b-5, promulgated to enforce section 10(b), makes it unlawful for any person, directly or indirectly, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).  *R2 Investments LDC v. Phillips,* 401 F.3d 638 (5th Cir. 2005).

6

To state a claim under section 10(b) and Rule 10b-5, the SEC must allege that Defendants: (1) used a fraudulent device, made a material misrepresentation or omission, or committed an act that operated as a fraud or deceit; (2) in connection with the purchase or sale of securities; and (3) acted with scienter. *See SEC v. Monarch Funding Corp.,* 192 F.3d 295, 308 (2d Cir. 1999); *SEC v. Pimco Advisors Fund Mgmt. LLC,* 341 F.Supp.2d 454, 463-64 (S.D.N.Y. 2004). The SEC is not required to allege or prove that investors relied on the misrepresentations. *S.E.C. v. Hopper*, 2006 WL 778640, at *9 (S.D. Tex. 2006).

A misstatement or omission is material if there is a substantial likelihood that a reasonable investor would consider the information to be important in making an investment decision. *Basic Inc. v. Levinson,* 485 U.S. 224, 231-232, 108 S. Ct. 978, 983, 99 L. Ed.2d 194 (1988). Stated in terms of an omission to state a fact, a fact is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available. *Id.* Materiality is a mixed question of law and fact. *S.E.C. v. Hoover,* 903 F.Supp. 1135, 1140 (S.D. Tex. 1995) (citing *Sioux, Ltd. Sec. Litig. v. Coopers & Lybrand,* 914 F.2d 61,65 (5th Cir. 1990)). The determination as to whether the allegations in the complaint sufficiently establish materiality is best left to resolution by a dispositive motion. *See Barrie v. Intervoice-Bright, Inc.* 397 F.3d 249, 257 (5th Cir. 2005).

"Scienter" is defined as a "mental state embracing intent to deceive, manipulate or defraud." *In re Comshare,* 183 F.3d at 548 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)) (quotation marks omitted). Scienter may be established through a showing of recklessness, which is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id* at 550 (citation and quotation marks omitted). And, "[w]hile the

danger need not be known, it must at least be so obvious that any reasonable [person] would have known of it." *Id*. (internal citations and quotation marks omitted).

The Court notes that a failure to follow GAAP, without more, cannot establish liability. *Barrie v. Intervoice-Brite, Inc.,* 397 F.3d 249 (5th Cir. 2005). The party must know that it is publishing materially false information. *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990). However, a fraudulent statement is not necessary for liability under § 10(b); participation in a scheme or course of business to defraud or use of a device or artifice to defraud is sufficient. *In re Global Crossing Ltd.,* 322 F.Supp.2d 319, 335 (S.D. N.Y. 2004) ("It is apparent from Rule 10b-5's language and the case law interpreting it that a cause of action exists under subsections (a) and (c) for behavior that constitutes participation in a fraudulent scheme, even absent a fraudulent statement by the defendant."). *In re Enron Corp. Securities,* 2005 WL 2230167, at *3 (S.D. Tex. 2005).

Abbood contends that the holding in *S.E.C. v. Orr,* 2006 WL 542986 (E.D. Mich. 2006), exonerates his conduct here. Abbood was a settling defendant in the *Orr* case. In *Orr*, an employee who was a divisional vice-president was held not liable for violations of 10(b) and 10b-5 because he was not "directly involved in the preparation or issuance of the Form 10-K for the 1999 or 2000 fiscal years." *Id.* at *11. Orr was involved in obtaining side letters much as Abbood was in this case. The SEC's response is that this holding is just plain wrong.

Abbood also relies on the recent Fifth Circuit decision in *Regents of University of California v. Credit Suisse First Boston (USA), Inc. ,* 482 F.3d 372 (5th Cir. 2007). The Court held that an act cannot be deceptive within the meaning of § 10(b) where the actor has no duty to disclose. *Id.* at 386. The SEC argues that the *Regents* decision applies only to secondary actors not primary actors

such as Abbood.  The Court agrees.

The relevant statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act .  The proscription does not include giving aid to a person who commits a manipulative or deceptive act.  *See Energytec, Inc. v. Proctor,* 2007 WL 1002138 (N.D. Tex. 2007).  However, the Court finds that, as alleged, Abbood is a primary actor and cannot escape liability merely because he was subordinate to Shapiro and Murphy.  The beneficiaries of this Circuit's holding in *Regents* are FMG, Dexsi, and Kraft, not Abbood.

## Claim Three: Section 13(b)(5) of the Exchange Act

Abbood also moves to dismiss the complaint's Third Claim.  The SEC alleges that Abbood knowingly circumvented or knowingly failed to implement a system of internal accounting controls at Fleming, or knowingly falsified Fleming's books, records and accounts.  The SEC alleges that Abbood also directly or indirectly falsified or caused to be falsified the books,  records, and accounts of Fleming.  In addition, according to the SEC, he caused to be made materially false or misleading statements or omissions to an accountant or auditor.  The SEC alleges that Abbood violated Section 13(b)(5) of the Exchange Act and various implementing rules of the SEC.

In his motion, Abbood contends that he was merely a "merchant" and not an officer as contemplated by the securities law.  The SEC contends that Abbood is such an officer.  According to the SEC, 15 U.S.C. § 78m(b)(5) provides that no person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or

account.  Under paragraph (2) of the section, Fleming was required, *inter alia,* to keep books and records that "accurately and fairly reflect the transactions and dispositions of the assets of the issuer," and to maintain a system of internal accounting controls sufficient to provide various assurances, including assurance that "the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences." § 13(b)(2).  This claim is not subject to the enhanced pleading standard of Federal Rule of Civil Procedure 9. *S.E.C. v. Stansbury Holdings Corp. ,* 2007 WL 552248, at *5 (D. Colo. 2007).

The Court finds that the allegations that Abbood misled the accountants or auditors about the existence of side agreements sufficiently supports the claim that he knowingly circumvented Fleming's system of internal accounting controls and thereby caused Fleming's books and records to be falsified.  *S.E.C. v. Lucent Technologies Inc.,* 2005 WL 1683741 (D. N.J. 2005).  Keeping in mind the disfavored nature of motions to dismiss, the Court declines to dismiss the claim as to 13(b)(5).

Claim One: 15 U.S.C. § 77q

Abbood also seeks dismissal of Claim One, which alleges violation of 15 U.S.C. § 77q. Section 17(a), 15 U.S.C. § 77q(a), is a general prohibition against fraud in the offer or sale of securities, using the mails or the instruments of interstate commerce.  Section 17(a)(1) forbids the direct or indirect use of any device, scheme, or artifice to defraud; Section 17(a)(2) makes it unlawful to obtain money or property through misstatements or omissions about material facts; and Section 17(a)(3) proscribes any transaction or course of business that operates as a fraud or deceit upon a securities buyer. *SEC v. Softpoint, Inc.,* 958 F.Supp. 846, 861 (S.D.N.Y. 1997), *aff'd,* 159 F.3d 1348,

1998 WL 537522 (2d Cir. 1998).

With respect to § 17(a), essentially the same elements must be established as for § 10(b) and Rule 10b-5 liability. *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1467 (2d Cir. 1996). Scienter, however, is not an element of a claim under § 17(a)(2) or § 17(a)(3). *Meadows v. SEC,* 119 F.3d 1219, 1226 n. 15 (5th Cir. 1997) (citing *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980)). Under these subsections, liability is established merely by a showing of negligence. *See id.*

The Court has already addressed this issue in response to Shapiro's Motion to Dismiss (*See* Dkt. 52). The Fifth Circuit recognized that the issue of whether one has to be an "offeror" or "seller" for Section 17(a) liability was not settled and clear. *Meadows v. S.E.C.*, 119 F.3d 1219, 1224-25 (5th Cir. 1997). The SEC argues for a broad interpretation and insists that the section should be given a more liberal reading. At this juncture and for the reasons already noted in Shapiro, the Court declines to dismiss at this early pleading stage.

<u>Claims Four, Five and Six: Aiding and Abetting</u>

Abbood also moves to dismiss claims Four, Five and Six. The Court will refer to these claims as the "aiding and abetting claims." To state a claim for aiding and abetting liability, the SEC must allege facts that, if true, establish: (1) that the primary party committed a securities violation; (2) that the defendant had a general awareness of his role in the violation; and (3) that the defendant knowingly rendered substantial assistance in the achievement of the primary violation. *SEC v. Morris,* 2005 WL 2000665, at *7 (S.D. Tex. 2005) (citing *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 621 (5th Cir. 1993)). With respect to the substantial assistance requirement, the SEC must allege

facts showing that Defendants' conduct was a "substantial causal factor in the perpetration" of the primary party's fraud.  *SEC v. DiBella,* 2005 WL 3215899, at *10 (D. Conn. 2005) (citations omitted).

Section 20(e) of the Private Securities Litigation Reform Act of 1995, which authorizes the SEC to bring claims for aiding and abetting primary securities law violations, was enacted in response to the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).  Congress amended the Exchange Act by adopting Section 20(e) to ensure that courts would not extend *Central Bank* to eliminate the SEC's power to enjoin aiding and abetting violations.  In drafting Section 20(e), Congress explicitly based the SEC's power to sue for aiding and abetting on the SEC's pre-existing and complementary power to sue for primary securities violations.  *S.E.C. v. Koenig*, 2007 WL 1074901 (N.D. Ill. 2007). Whether conduct gives rise to primary liability or merely constitutes aiding and abetting is not always clear.  *S.E.C. v. Hopper* ,2006 WL 778640, at *9 (S.D. Tex. 2006).

Claim Four accuses Abbood of aiding and abetting violations of Section 10(b)(5) and 10(b). Either Abbood is primarily liable, or he is not.  Under the law of this Circuit, there is no secondary liability under this section.  Section 10(b) does not give rise to aiding and abetting liability.  *Regents,* 482 F.3d at 386.  The Supreme Court has recently held as such.  *See Stonebridge Inv. Partners, LLC v. Scientific-Atlanta* 128 S. Ct. 761 (2008).  Claim Four should therefore be dismissed.

Claim Five alleges a violation of Section 13(a) and Rules 12b-20, 13a-1 and 13a-13.  Section 13(a) and Rules 13a-1 and 13a-13 require issuers of registered securities to file with the SEC annual and quarterly reports, and, under Rule 12b-20, Fleming had a duty to correct any misstatements or

omissions contained in the reports as necessary to ensure that they are not misleading. *See* 15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13.  The complaint alleges Abbood's failure to disclose the full nature of the side agreements is a breach of this duty.  For pleading purposes, the SEC's claim survives the Motion to Dismiss.

The SEC's Sixth Claim alleges aiding and abetting violations of 13(b)(2)(A)(B).  To establish liability for aiding and abetting a violation of Exchange Act Sections 13(b)(2)(A) and (B), 15 U.S.C. § 78m(b)(2)(A) and (B), the SEC must prove: (1) that Fleming committed a primary violation; (2) that Abbood substantially assisted the violation; and (3) that he acted with the requisite scienter. *Ponce v. SEC,* 345 F.3d 722, 737 (9th Cir. 2003).  The Court finds that the SEC has met its pleading burden as to the Claim based on Abbood's active participation in obtaining the side letters.

The Court finds that at this stage of the proceedings, the SEC has sufficiently stated a claim for relief as to the aiding and abetting claims in Count Five and Six.  The SEC has sufficiently alleged Abbood's participation in not only securing side letters as to some vendors but also actively communicating with auditors and accountants or omitting certain key components of the real agreements involved. Therefore, the motion to dismiss Claim Five and Claim Six should be denied.

## RECOMMENDATION

Based upon the foregoing, it is the Court's recommendation that Defendant Albert M. Abbood's Motion to Dismiss (Dkt. No. 62) should be GRANTED as to SEC's Claim Four and as to the SEC's complaint concerning FMG, under Rule 9(b).  The motion to dismiss should be DENIED in all other respects.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. §636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn,* 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

**SO ORDERED**.

**SIGNED this 5th day of March, 2008.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

14